(79 South. 424)

No. 21073.

CHALMERS v. FROST–JOHNSON LUMBER CO. et al.

(Jan. 28, 1918. On Rehearing, June 29, 1918.)

*(Syllabus by the Court.)*

1. PUBLIC LANDS ⬤⇒152 — RECEIVER'S CERTIFICATE—RECORD—NOTICE.

The rule that an unrecorded sale of real estate does not bind third parties applies as well to a receiver's certificate, not recorded in the land office, and on which no patent was issued, as to a sale made by an individual, not recorded in the parish in which the land conveyed is situated.

On Rehearing.

2. APPEAL AND ERROR ⬤⇒1178(4)—REMAND FOR NEW TRIAL—NEWLY DISCOVERED EVIDENCE.

A civil case will not be remanded for the introduction of newly discovered evidence when the failure to make the discovery during the trial in the district court appears to have been attributable to a lack of diligence, and, particularly, where the claim asserted is stale and without equity.

Appeal from Twenty-Fifth Judicial District Court, Parish of Livingston; Roberts S. Ellis, Judge.

Petitory action by Charles O. Chalmers against the Frost-Johnson Lumber Company, in which defendant called in warranty the Eastern Land & Lumber Company, Limited, and in which such warrantor called in warranty Mrs. Sallie W. Henry and others. Judgment for defendant, and plaintiff appeals. Affirmed.

Purser & Magruder, of Amite, for appellant. R. C. & S. Reid, of Amite, for defendant. F. S. Weis, of New Orleans, for warrantors. H. W. Kaiser, of New Orleans, for appellee Eastern Land & Lumber Co., Limited.

O'NIELL, J. This is a petitory action in which the plaintiff claims title to a tract of land in the defendant's possession. The plaintiff's claim is based upon a receipt purporting to have been issued to one Henderson Young, by William A. Gill, receiver of the

state land office, formerly located at Greensburg, La. The receipt bears date the 1st of December, 1862, and the number 5499.

The defendant's title is based upon two state patents issued to Charles W. Henry, dated the 13th of March, 1891, and numbered, respectively, 4181 and 4182, duly recorded in the state land office at Baton Rouge.

[1] The receiver's receipt No. 5499, on which the plaintiff's right of recovery depends, was never recorded in the land office, and was not filed for record in the parish in which the land is situated until the 25th of April, 1913, long after the issuance and registry of the patent to Charles W. Henry. It was proven affirmatively, not only that there was no record whatever in the land office of the issuance of the receiver's certificate or receipt for the land in contest, but also that there was no record whatever in the office of the state treasurer of the receipt of the price called for by the certificate No. 5499.

It is not necessary, however, to consider the defendant's denial that the receiver's receipt held by the plaintiff is genuine. It was not recorded in the land office when the patent issued to the defendant's author in title. Since it has been decided that patents or title deeds issued by the state or United States need not be recorded in the parish in which the land is situated—that registry in the land office is sufficient—to give notice to the public of such outstanding titles, the rule that a purchaser of real estate is not bound by an unrecorded prior sale made by his vendor of the same property must apply as well to a sale made by the state, not recorded in the land office, as to a sale made by an individual, not recorded in the parish in which the land is situated.

The judgment rendered by the district court in favor of the defendant is therefore correct.

The judgment is affirmed, at appellant's cost.

## On Rehearing.

MONROE, C. J. The rehearing was granted herein solely upon the question, Shall the case be remanded? and the reason for granting it was that, in his application therefor plaintiff alleges that, on February 6, 1918, he learned, by chance, that some of the archives of the state land office had been taken in charge by the United States government during the Civil War; that he at once caused a search to be made in the United States land office, with the result that there was discovered the record of receiver's receipt No. 5499, dated December 1, 1862, showing payment by Henderson Young of $40 for the land, or part of the land, here claimed, the register of receipts being signed by William A. Gill, receiver at Greensburg, as of date January 1, 1863. He further alleges:

"That both he and his counsel naturally assumed, and, until the said 6th day of February, 1918, were not otherwise informed, that all the books relating to the land transactions of the state were to be found in the land office of the state, at Baton Rouge; that neither your petitioner nor his counsel could assume, or had the right to assume, that any part of those records were missing, or, if missing, where they could be located; and that no reasonable diligence that either your petitioner or his counsel could display could or would have placed them in possession of this information but for an accident."

Counsel for defendant and appellant call the attention of the court to the following testimony, elicited from Judge Reid, then of counsel for defendant, but called as witness for plaintiff, by W. S. Rownd, Esq. (now Judge Rownd, but then sole counsel for the plaintiff), upon the trial of the case on April 27, 1914, to wit:

Judge Reid had stated, in answer to a previous question, that, according to his information, "nearly all of the receiver's receipts that were issued in 1861 and 1862, or at least a very large portion of them, were in existence, or the records of them. He was then interrogated and answered as follows:

"Q. Is it any more than fair for you to state that your information is to the effect that they are in the State Land Office?

"A. It is my information that they are in the United States land office, and, in the consolidation, those papers were carried over there: that is my information; I haven't examined them since. Let me state a little more fully. I went to the United States land office, and, in looking up some land matter, I was informed that, in the Custom House in New Orleans, were those old records. I understand now, that they are in Baton Rouge, in the land office."

Defendant's counsel also call our attention to Act 104 of 1871, section 12 of which reads:

"Sec. 12. * * * That all sales and locations of public lands, made by this state, from the 1st of January, 1861, to the 14th of October, 1864, which are shown by the records of the register's office, be and the same are hereby confirmed, and patents shall, on demand, be issued in the name of the purchaser, and be delivered to the party surrendering the proof of entry or location, or on making, to the satisfaction of the register, proof of loss."

[2] While, therefore, it is no doubt true, as the present counsel for plaintiff state, that they knew nothing of the whereabouts of the missing Greensburg records until February 6, 1918, it does not appear that they ever made any effort to acquire any information on that subject, such information as they eventually acquired having come to them merely by chance, and it does appear that, nearly four years prior to that time the counsel who then had charge of the case elicited from opposing counsel, whom he called as a witness for plaintiff, that, according to his information, the missing records were at one time in the United States land office, and that "in 'the consolidation' those papers were carried over there" (meaning to the state land office). But as it appears to us, plaintiff's counsel was put upon inquiry with respect to both offices, and with that information can hardly be said to have exercised even ordinary diligence in abandoning his search, on failing to find the missing records in one of them. He should have visited the other. That, however, is not the only instance of a lack of diligence on the part of the plaintiff and his authors. In a

late brief filed by his learned counsel, we find the following:

"Henderson Young received receipt 5499, swamp land, for $40, 320 acres of land, December 1, 1862. * * * He died July 19, 1863. He left one child, Josephine, who died June 28, 1864. Mrs. Mary S. Evans Chalmers, as widow in community, owned one-half, and as sole heir of Josephine she inherited the remaining one-half. Mrs. Young was seised of right of the land. The receipt went into her trunk, where it remained until 'last March' (March, 1912)."

So that, from the death of her husband (July 19, 1863) to the institution of this suit (September 29, 1913), a period of more than 50 years, the plaintiff and his authors gave no sign that they were the owners of the land in question. In the meanwhile (in 1871), the state passed a law to facilitate those who had bought its lands, during the disturbed period between January 1, 1861, and October 15, 1864, in obtaining patents therefor, and it would probably have been easy enough at that time to have traced the missing Greensburg books, but the owner of receipt 5499 allowed it to keep its place and made no request for a patent. Then there was a consolidation of land offices, but the book in which receipt 5499 was recorded was left in the United States land office, and the officers in the state land office, keeping no record of it, in 1891 issued a patent for the land here in dispute to Charles W. Harvey, who paid his money for it, and was quite as innocent in so doing as was Henderson Young in 1862. As Young went to the proper place to buy the land, and had the right to rely upon it that he would get value for his money, so, also, did Harvey, and he was no more to blame that Young's title was not then recorded than was Young—not so much, for Young and his transferee had had 28 years in which to find out that their title was not recorded, while Harvey had no reason to suppose that the land which was sold to him had previously been sold to Young, or to any one else. Thereafter, from 1891 to the present time,

Harvey and his successors in title have paid the taxes on, and done various acts to indicate their ownership of, the land. Young and his successors for more than 50 years have paid no taxes, and do not appear to have known that they had a shadow of interest in the land. It is the opinion of the writer that plaintiff's claim is barred by the prescription of 30 years, liberandi causa, under articles 3528 and 3548, C. C., but, whether the court should take that view of the matter or not, it seems clear that the claim, being a stale one, is of a class which is not looked upon with favor, and that the indulgence now prayed for should not be granted.

It is therefore ordered that the judgment heretofore rendered be now reinstated and made final.

PROVOSTY, J., concurs in the decree.